IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MONTVALE SURGICAL CENTER, LLC a/s/o M.A.,<br><br>      Plaintiffs,<br><br>  v.<br><br>HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY, INC.; ABC CORP. (1-10)(Said names being fictitious and unknown entities),<br><br>      Defendants. | CIVIL ACTION NO.: 12-2378-DMC-JAD |

MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR SUMMERY JUDGEMENT

                   Edward S. Wardell, Esquire
                   Matthew A. Baker, Esquire
                   CONNELL FOLEY LLP
                   Liberty View
                   457 Haddonfield Rd., Ste. 230
                   Cherry Hill, NJ 08002

                   *Attorneys for Defendant*
                   *Horizon Blue Cross Blue Shield*
                   *of New Jersey*

Dated: January 10, 2013

2836868-01

## TABLE OF CONTENTS

TABLE OF CONTENTS .......................................................................................................... i

TABLE OF AUTHORITIES .................................................................................................... ii

I.   INTRODUCTION .......................................................................................................... 1

II.  STATEMENT OF FACTS AND PROCEDURAL HISTORY ..................................... 1

    A.   The Parties ............................................................................................................. 1

    B.   The Plaintiff Ambulatory Surgical Center ............................................................. 2

    C.   The Applicable ERISA-Governed Employee Benefits Plan .................................. 2

    D.   Horizon's Benefit Determination Under the Terms of the Plan ............................. 3

    E.   Plaintiff's Claim for Benefits Under the Plan ........................................................ 5

III. LEGAL ARGUMENT ................................................................................................... 5

    A.   The Summary Judgment Standard ......................................................................... 5

    B.   Horizon's Denial of Benefits was not Arbitrary and Capricious ............................ 6

    C.   ERISA Completely and Expressly Preempts Plaintiff's State Law Claims ........... 8

    D.   Horizon is Entitled to Attorney's Fees and Costs under ERISA .......................... 10

IV. CONCLUSION ............................................................................................................ 11

2836868-01

# TABLE OF AUTHORITIES

**Cases**

Aetna Health Inc. v. Davila, 542 U.S. 200 (2004) .................................................................. 8, 9

Celotex Corp. v. Catrett, 477 U.S. 316 (1986) ............................................................................ 6

Estate of Schwing v. The Lilly Health Plan, 562 F.3d 316 (3d Cir. 2009) .................................. 6

FMC Corp. v. Holliday, 498 U.S. 525 (1990) ............................................................................ 9

Gambino v. Anrouk, 232 Fed. Appx. 140 (3d Cir. 2007) ........................................................... 6

Howley v. Mellon Fin. Corp., 625 F.3d 788 (3d Cir. 2010) .................................................. 6, 7

Kelso v. General American Life Ins. Co., 967 F.2d 388 (10th Cir. 1992) .................................. 9

Marciniak v. Prudential Ins. Co. of Am., 184 Fed. Appx. 266 (3d Cir. 2006) ............................ 6

Massachusetts Mutual Life Ins. Co. v. Russell, 473 U.S. 134 (1985) ........................................ 8

McCall v. Metropolitan Life Insurance Company, 956 F. Supp. (D.N.J. 1996) ......................... 6

McLeod v. Hartford Life and Acc. Ins. Co., 372 F.3d 618 (3d Cir. 2004) .................................. 6

McPherson v. Employees' Pension Plan of Am. Re-Insurance Co., 33 F.3d 253
    (3d Cir. 1994) ....................................................................................................................... 10

Metz v. United Counties Bancorp., 61 F.Supp.2d 364 (D.N.J. 1999) ........................................ 9

Moats v. United Mine Workers of American Health and Retirement Funds, 981 F.2d 685
    (3d Cir. 1992) ......................................................................................................................... 7

Pilot Life Ins. Co. v. Deadeaux, 481 U.S. 41 (1987) .................................................................. 8

Pryzbowski v. U.S. Healthcare, 245 F.3d 266 (3d Cir. 2001) ................................................ 8, 9

Shapiro v. Metropolitan Life Ins. Co., 2010 WL 1779392 (D.N.J. 2010) .................................. 7

2836868-01

# TABLE OF AUTHORITIES
(continued)

**Other Authorities**

29 U.S.C. § 1001 et seq ................................................................................................1

29 U.S.C. § 1001 et seq. ...............................................................................................2

29 U.S.C. 1132(g).......................................................................................................10

N.J.S.A. 17:48E-1 to -48 ..............................................................................................1

## I. INTRODUCTION

Plaintiff Montvale Surgical Center brought this action against Defendant Horizon Blue Cross Blue Shield of New Jersey ("Horizon"), as the alleged assignee of M.A., to recover benefits for sacroiliac injections under fluoroscopic guidance allegedly rendered to M.A. on or about March 8, 2010. M.A. receives health benefits through a employee health benefit plan sponsored by YWCA of Bergen County, which is governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA").

By this Motion, Defendant Horizon moves for summary judgment because Horizon's benefit determination was not "arbitrary and capricious." Horizon properly reimbursed Plaintiff for the claims at issue because under the terms of the health benefit plan at issue, Horizon determines the allowed amount for services rendered by an out-of-network provider. Plaintiff cannot show that Horizon acted "arbitrary and capriciously" as Plaintiff never gave Horizon any basis for its charges on which it can contend that Horizon should have reconsidered its benefit determination. For all of the foregoing reasons, Horizon respectfully requests that the Court grant Horizon summary judgment and dismiss Plaintiff's Complaint with prejudice.

## II. STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A. The Parties

Horizon is a not-for-profit health service corporation established under the Health Service Corporation Act, N.J.S.A. 17:48E-1 to -48, and is authorized to transact business in the State of New Jersey, with its principal place of business located at Three Penn Plaza, Newark, New Jersey. (Notice of Removal, ¶ 3). Horizon, among other things, provides health benefits and administers benefits for participants and beneficiaries of employee health benefit plans governed

by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"). (Notice of Removal, ¶ 3).

**B.     The Plaintiff Ambulatory Surgical Center**

Plaintiff Montvale Surgical Center ("MSC") is an outpatient Ambulatory Surgery Center (ASC) where allegedly minimally invasive pain management and podiatry procedures are performed, having its office located at 6 Chestnut Ridge Road, Montvale, New Jersey 07645. (Complaint, ¶ 1). At all relevant times, MSC was an "out-of-network" medical provider and does not have a contract with Horizon, and is bringing this action as an alleged assignee of M.A. (Complaint, ¶ 1, 7).

**C.     The Applicable ERISA-Governed Employee Benefits Plan**

M.A. receives health benefits from her employer, YWCA of Bergen County, through an employee benefit plan governed by ERISA (the "Plan"). (Attached hereto as Exhibit "A" are the relevant portions of the Plan). Horizon processes claims for payment pursuant to the terms, conditions and limitations of the Plan and determines the allowance to be paid to out-of-network providers.

The Plan excludes from coverage "any part of a charge that exceeds the allowance." (Exhibit "A" pp. 90). The Plan defines allowance for an out-of-network provider as:

> the amount determined for the service or supply based on the Resource Based Relative Value System promulgated by the Centers for Medicare and Medicaid Services; or ... an amount determined for the service or supply based on: (i) profiles compiled by Horizon BCBSNJ based on the usual and prevailing payments made to providers for similar services or supplies in specific geographical areas; or (ii) similar profiles complied by outside vendors.

2

(Id. at 7). The Plan further explicitly states that "services and supplies provided by an Out-of-Network provider, are covered at the Out-of-Network level." (Id. at 27). The schedule of covered services and supplies shows that the Horizon reimburses out-of-network providers at 70% of covered charges. (Id. at 28). The Plan notes that the member "may be responsible for paying charges which exceed our Allowance, when services are rendered by an Out-of-Network Provider." (Id. at 27).

### D. Horizon's Benefit Determination Under the Terms of the Plan

#### 1. Horizon Properly Reimbursed the Claims at Issue

Plaintiff seeks to recover payment for sacroiliac injections under fluoroscopic guidance rendered to M.A. on March 8, 2010. Plaintiff submitted charges in the amount of $8,400. (Attached hereto as Exhibit "B" is the Explanation of Benefits form for the services at issue). The allowed amount under the terms of the Plan was $459.00. (Id.) Horizon issued payment on the claims in the amount at 70% of covered charges for payment of $321.30. (Id.).

#### 2. Horizon Properly Determined Plaintiffs Appeals for Increased Reimbursement

Plaintiff first submitted an appeal to Horizon on or about September 29, 2010 disputing Horizon's reimbursement for the services at issue. (Attached hereto as Exhibit "C" is the Plaintiff's September 29, 2010 appeal). Plaintiff's appeal simply stated:

> In regards to the above named patient we are appealing your decision to allow $321.30 total ... . We are a non-participating ambulatory surgical center and are not held to fee schedules. Attached please find a copy of the patient's benefits for ASC's. Please note there are no limitations indicated in the patient's plan description that would limit an ASC reimbursement.

> Non-participating provider charges are reimbursed based on R&C (Reasonable & Customary) fees determined by our geographic location. Horizon's allowance of $321.20 was considerably less than R&C.

(Exhibit "C").

Horizon responded to this appeal on or about October 19, 2010. (Attached hereto as Exhibit "D" is Horizon's 10/19/2010 response). Horizon noted that "ambulatory surgical center charges are often far in excess of what the largest healthcare payer in the country, Medicare, would reimburse." (Exhibit "D"). Horizon's appeal response gave notice to Plaintiff that:

> in October, 2004, Horizon BCBSNJ updated the out-of-network allowance for reimbursement of non-participating New Jersey ambulatory surgery centers. In establishing an updated out-of-network allowance for New Jersey ambulatory surgical center services, Horizon BCBSNJ engaged a nationally recognized consulting firm specializing in healthcare matters to research and develop the updated allowance.

(Id.) Horizon's decision concluded with "the payment made to your facility is correct, and is in accordance with Horizon's reimbursement policy." (Id.)

Plaintiff submitted another appeal to Horizon on or about November 30, 2010. (Attached hereto as Exhibit "E" is Plaintiff's 11/30/2010 appeal). This second level appeal was virtually identical to the first level appeal. Horizon responded to Plaintiff's second level appeal on or about December 28, 2010 reiterating that "the payment made to your facility is correct, and is in accordance with the [sic] Horizon's reimbursement policy." (Attached hereto as Exhibit "F" is Horizon's 12/28/2010 response).

Neither of Plaintiff's appeals contained any information on which Horizon could determine how Plaintiff calculated its alleged "usual and customary" rate. Plaintiff's failure to

4

submit any information which Horizon could consider with respect to how Plaintiff calculated their charges is fatal to Plaintiff's claim.

### E. Plaintiff's Claim for Benefits Under the Plan

Plaintiffs filed a Complaint against Horizon seeking increased reimbursement for sacroiliac injections under fluoroscopic guidance purportedly rendered to M.A. on March 8, 2010, under the terms of the Plan. Plaintiff submitted charges in the amount of $8,400 of which Horizon allowed $459.00, and paid reimbursement of $321.30 to Plaintiff. (Complaint, ¶ 12). The explanation of benefits form provided by Horizon indicated that the member was responsible for $137.70 and the remaining balance of $8,078.70 was not allowed. (Complaint ¶ 13). Plaintiffs contends that "the usual and customary fee, often referred to as the 'reasonable and customary' fee, is defined, or is reasonably interpreted to mean, the amount that providers like the Plaintiffs, normally charge to their patients in the free market, i.e. without an agreement with an insurance company to reduce such a charge in exchange for obtaining access to the insurance company's subscribers." (Complaint, ¶ 10). Plaintiff further contends that "the UCR fee means the usual charge for a particular service by providers in the same geographic area with similar training and experience. (Complaint, ¶ 10). Plaintiff is now seeking increased reimbursement for these services in the amount of $8,078.70. (Complaint ¶ 13).

## III. LEGAL ARGUMENT

### A. The Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides for the entry of summary judgment when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Although a Court must view the evidence in the light most favorable to the non-moving party, Rule 56(c)

5

2836868-01

requires the entry of summary judgment against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case. See McCall v. Metropolitan Life Insurance Company, 956 F. Supp. 1172, 1179-80 (D.N.J. 1996). When, as in this case, the Defendant shows "that there is an absence of evidence to support [the plaintiff's] case," the plaintiff must produce sufficient evidence to support its claims. Celotex Corp. v. Catrett, 477 U.S. 316, 325 (1986); See McCall, 956 F.Supp. at 1180.

### B. Horizon's Denial of Benefits was not Arbitrary and Capricious

Horizon did not act arbitrarily and capriciously in reimbursing the procedures at the allowed amount under the terms of the Plan. Horizon's reimbursement was based upon the applicable Plan language in which Horizon is to determine the allowed amount. Applying fundamental ERISA principles to the facts fatally undermines Plaintiffs' claims against Horizon.

"Courts reviewing the decisions of ERISA plan administrators or fiduciaries in civil enforcement actions ... should apply a deferential abuse of discretion standard of review across the board[.]" Estate of Schwing v. The Lilly Health Plan, 562 F.3d 522, 525 (3d Cir. 2009). Under this standard, courts may only overturn a plan administrator's denial of coverage if "it is without reason, unsupported by substantial evidence or erroneous as a matter of law." Gambino v. Anrouk, 232 Fed. Appx. 140, 145 (3d Cir. 2007)(quoting McLeod v. Hartford Life and Acc. Ins. Co., 372 F.3d 618, 623 (3d Cir. 2004)). A court reviewing an ERISA plan administrator's coverage decision must look only to the evidence before the administrator at the time the decision was made. Howley v. Mellon Fin. Corp., 625 F.3d 788, 793 (3d Cir. 2010); Marciniak v. Prudential Ins. Co. of Am., 184 Fed. Appx. 266, 269 (3d Cir. 2006). This is because only the materials considered by the administrator are relevant to the analysis of whether the decision rendered was or was not "arbitrary and capricious." Howley, 625 F.3d at 793.

6

Where the claim administrator's actions were based upon the clear language of the policy, the actions were not "arbitrary or capricious" as a matter of law and the court must defer to the Claim Administrator. Shapiro v. Metropolitan Life Ins. Co., 2010 WL 1779392 (D.N.J. 2010)(Pisano, J.)(Attached hereto as Exhibit "G" is a copy of the unpublished Shapiro opinion). Furthermore, "[t]he Court may not substitute its own judgment as to the interpretation of the plan where this heightened standard is deemed appropriate." Id. at *4-5 (citing Moats v. United Mine Workers of American Health and Retirement Funds, 981 F.2d 685, 687-88 (3d Cir. 1992)).

Plaintiffs cannot show that Horizon's benefit determination in this matter was arbitrary or capricious. A review of the administrative record illustrates that Horizon reimbursed the claims at issue under the terms of the Plan. In submitting their appeals to Horizon, Plaintiff relied only on conclusory statements that "Horizon's allowance ... was considerably less than R&C." (Exhibit "C"). Plaintiff does not, either in their first or second level appeal, offer any information to support their calculation of their charges. (Exhibit "C"; Exhibit "E"). Plaintiff's appeals were woefully inadequate, as they presented no information on which Horizon could possibly reconsider its determination of UCR. Plaintiff failed to provide any evidence or any information on which they contend their calculation of UCR is based, and no reference is made to how Plaintiff's charges compare to other providers in the same geographical region. As such, Horizon could not reasonably be expected to do anything but affirm its original determination and clearly did not act in an "arbitrary and capricious" matter.

### C. ERISA Completely and Expressly Preempts Plaintiff's State Law Claims

ERISA contains two statutory provisions which preempt state law causes of action. The first of ERISA's two preemption provisions, Section 502(a) of ERISA, 29 U.S.C. §1132(a), sets forth a comprehensive civil enforcement scheme which forecloses state law claims that seek to supplement or supplant its remedies. In <u>Pilot Life Ins. Co. v. Deadeaux</u>, 481 U.S. 41, 54 (1987), the Supreme Court explained:

> [T]he detailed provisions of 502(a) set forth a comprehensive civil enforcement scheme that represent a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA.

<u>Id.</u> at 54, quoting <u>Massachusetts Mutual Life Ins. Co. v. Russell</u>, 473 U.S. 134, 146 (1985); see <u>Aetna Health Inc. v. Davila</u>, 542 U.S. 200, 208 (2004). For this reason, any claim that falls within the scope of Section 502(a) is completely preempted. <u>Pryzbowski v. U.S. Healthcare</u>, 245 F.3d 266, 271-72 (3d Cir. 2001).

In order to maintain the integrity of its exclusive regulatory scheme, ERISA also contains an express preemption clause. Section 514(a) of ERISA, 29 U.S.C. §1144(a), preempts "any and all state laws" that "relate to any employee benefit plan." Although not without limits, the Supreme Court has repeatedly found that the express preemption provisions of Section 514(a) of ERISA are deliberately expansive. <u>Pilot Life</u>, 481 U.S. at 46. "[ERISA's] pre-emption clause is conspicuous for its breadth. It establishes an area of federal concern the subject of every state law that 'relate[s] to' an employee benefit plan governed by ERISA." <u>FMC Corp. v. Holliday</u>, 498 U.S. 52, 58 (1990).

8

1.  **Section 502(a) of ERISA Completely Preempts Plaintiff's State Law Claims**

Section 502(a) of ERISA completely preempts Plaintiff's state law claims against Defendants because it improperly seeks to duplicate and supplement the exclusive remedies available under ERISA. Under Section 502(a), "any state law cause of action that duplicates, supplements or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted." Davila, 542 U.S. at 209. For this reason, any claim that "challenges the administration of or eligibility for benefits" is completely preempted and must be dismissed." Pryzbowski, 425 F.3d at 273.

2.  **Section 514(a) of ERISA Expressly Preempts Plaintiff's State Law Claims**

Section 514(a) of ERISA, 29 U.S.C. §1144(a), expressly preempts any state law that relates to an employee benefit plan. One primary purpose of this provision is to eliminate the risk of conflicting and inconsistent state regulation of employee benefit plans. Metz v. United Counties Bancorp., 61 F.Supp.2d 364, 381(D.N.J. 1999). For this reason, Section 514(a) expressly preempts state law tort claims. Courts have repeatedly held that Section 514(a) preempts state law claims that an insurer misrepresented the amount or availability of benefits under an employee benefit plan. See, e.g. Metz, 61 F.Supp.2d at 381; Kelso v. General American Life Ins. Co., 967 F.2d 388, 390-91 (10th Cir. 1992). Because Plaintiff's claims are based on the alleged denial of payment of benefits under the plan, they once again involve the administration of benefits and relate to the Plan. Indeed, Plaintiff's claims pose the precise risk of inconsistent state regulation that Section 514(a) is designed to prevent. If claims like those pleaded by Plaintiff are allowed to stand, a provider could bring a state court action for damages

2836868-01

any time a benefit plan denied coverage or reduced benefits because the services were not otherwise covered under the terms of a plan.

### D. Horizon is Entitled to Attorney's Fees and Costs under ERISA

ERISA allows a court to grant "reasonable attorney's fee[s] and costs of [an] action to either party." 29 U.S.C. 1132(g). This statutory language grants a court hearing a claim governed by ERISA with discretion to award any party, including the insurer, its attorney's fees and costs. McPherson v. Employees' Pension Plan of Am. Re-Insurance Co., 33 F.3d 253 (3d Cir. 1994). In exercising its discretion, the Court may considering the following five factors: (1) the offending parties culpability or bad faith; (2) the ability of the offending parties to satisfy an award of attorneys' fees; (3) the deterrent effect of an award of attorneys' fees against the offending parties; (4) the benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the parties' position. Id. at 254.

In this case, Horizon is entitled to attorney's fees and costs associated with this litigation because the Plaintiff's knew or should have known that they submitted no information on appeal on which they could reasonably expect Horizon to rely on in changing its initial benefit determination. Plaintiff's knew or should have known that from even a cursory review of Plaintiff's appeals submission that there is no reasonable basis on which Plaintiff could sustain its claim. Because Plaintiff knew of should have known that they had no colorable claim against Horizon as their claims lacked legal merit, Horizon is entitled to an award of its fees and costs.

2836868-01

## IV. CONCLUSION

For the foregoing reasons, Defendants Horizon Blue Cross Blue Shield of New Jersey and respectfully requests that this Court grant summary judgment in its favor and dismiss Plaintiff's Complaint with prejudice.

CONNELL FOLEY LLP
Liberty View
457 Haddonfield Road, Suite 230
Cherry Hill, New Jersey 08002
(856) 317-7100

*Attorneys for Defendant*
*Horizon Blue Cross Blue Shield of New*
*Jersey*

BY: *s/Edward S. Wardell*
    Edward S. Wardell, Esquire
    Matthew A. Baker, Esquire

DATE: January 10, 2012