IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MONTVALE SURGICAL CENTER, LLC a/s/o M.A., <br><br> Plaintiffs, <br><br> v. <br><br> HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY, INC.; ABC CORP. (1-10)(Said names being fictitious and unknown entities), <br><br> Defendants. | CIVIL ACTION NO.: 12-2378 |

## STATEMENT OF UNCONTESTED FACTS

Pursuant to Local Rule 56.1, Defendant Horizon Blue Cross Blue Shield of New Jersey respectfully submits this Statement of Uncontested Facts in Support of their Motion for Summary Judgment in their favor and against Plaintiffs.

**1.   The Parties**

1.   Horizon is a not-for-profit health service corporation established under the Health Service Corporation Act, N.J.S.A. 17:48E-1 to -48, and is authorized to transact business in the State of New Jersey, with its principal place of business located at Three Penn Plaza, Newark, New Jersey. (Notice of Removal, ¶ 3).

2.   Horizon, among other things, provides health benefits and administers benefits for participants and beneficiaries of employee health benefit plans governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"). (Notice of Removal, ¶ 3).

3.      Plaintiff Montvale Surgical Center ("MSC") is an outpatient Ambulatory Surgery Center (ASC) where allegedly minimally invasive pain management and podiatry procedures are performed, having its office located at 6 Chestnut Ridge Road, Montvale, New Jersey 07645. (Complaint, ¶ 1).

4.      At all relevant times, MSC was an "out-of-network" medical provider and does not have a contract with Horizon, and is bringing this action as an alleged assignee of M.A. (Complaint, ¶ 1, 7).

**2.      The Applicable ERISA-Governed Employee Benefits Plan**

5.      M.A. receives health benefits from her employer, YWCA of Bergen County, through an employee benefit plan governed by ERISA (the "Plan"). (Attached hereto as Exhibit "A" are the relevant portions of the Plan).

6.      Horizon processes claims for payment pursuant to the terms, conditions and limitations of the Plan and determines the allowance to be paid to out-of-network providers. (Exhibit "A").

7.      The Plan excludes from coverage "any part of a charge that exceeds the allowance." (Exhibit "A" pp. 90). The Plan defines allowance for an out-of-network provider as:

> the amount determined for the service or supply based on the Resource Based Relative Value System promulgated by the Centers for Medicare and Medicaid Services; or ... an amount determined for the service or supply based on: (i) profiles compiled by Horizon BCBSNJ based on the usual and prevailing payments made to providers for similar services or supplies in specific geographical areas; or (ii) similar profiles complied by outside vendors.

(Id. at 7).

2845930-01

8.  The Plan further explicitly states that "services and supplies provided by an Out-of-Network provider, are covered at the Out-of-Network level." (Id. at 27).

9.  The schedule of covered services and supplies shows that the Horizon reimburses out-of-network providers at 70% of covered charges. (Id. at 28).

10. The Plan notes that the member "may be responsible for paying charges which exceed our Allowance, when services are rendered by an Out-of-Network Provider." (Id. at 27).

### 3. Horizon's Benefit Determination Under the Terms of the Plan

#### a. Horizon Properly Reimbursed the Claims at Issue

10. Plaintiff seeks to recover payment for sacroiliac injections under fluoroscopic guidance rendered to M.A. on March 8, 2010. (Complaint).

11. Plaintiff submitted charges in the amount of $8,400. (Attached hereto as Exhibit "B" is the Explanation of Benefits form for the services at issue).

12. The allowed amount under the terms of the Plan was $459.00. (Id.)

13. Horizon issued payment on the claims in the amount at 70% of covered charges for payment of $321.30. (Id.).

#### b. Horizon Properly Determined Plaintiffs Appeals for Increased Reimbursement

14. Plaintiff first submitted an appeal to Horizon on or about September 29, 2010 disputing Horizon's reimbursement for the services at issue. (Attached hereto as Exhibit "C" is the Plaintiff's September 29, 2010 appeal). Plaintiff's appeal simply stated:

> In regards to the above named patient we are appealing your decision to allow $321.30 total ... . We are a non-participating ambulatory surgical center and are not held to fee schedules. Attached please find a copy of the patient's benefits for ASC's. Please note there are no limitations indicated in the patient's plan description that would limit an ASC reimbursement.

2845930-01

> Non-participating provider charges are reimbursed based on R&C (Reasonable & Customary) fees determined by our geographic location. Horizon's allowance of $321.20 was considerably less than R&C.

(Exhibit "C").

15. Horizon responded to this appeal on or about October 19, 2010. (Attached hereto as Exhibit "D" is Horizon's 10/19/2010 response). Horizon noted that "ambulatory surgical center charges are often far in excess of what the largest healthcare payer in the country, Medicare, would reimburse." (Exhibit "D").

16. Horizon's appeal response gave notice to Plaintiff that:

> in October, 2004, Horizon BCBSNJ updated the out-of-network allowance for reimbursement of non-participating New Jersey ambulatory surgery centers. In establishing an updated out-of-network allowance for New Jersey ambulatory surgical center services, Horizon BCBSNJ engaged a nationally recognized consulting firm specializing in healthcare matters to research and develop the updated allowance.

(Id.)

17. Horizon's decision concluded with "the payment made to your facility is correct, and is in accordance with Horizon's reimbursement policy." (Id.)

18. Plaintiff submitted another appeal to Horizon on or about November 30, 2010. (Attached hereto as Exhibit "E" is Plaintiff's 11/30/2010 appeal). This second level appeal was virtually identical to the first level appeal.

19. Horizon responded to Plaintiff's second level appeal on or about December 28, 2010 reiterating that "the payment made to your facility is correct, and is in accordance with the [sic] Horizon's reimbursement policy." (Attached hereto as Exhibit "F" is Horizon's 12/28/2010 response).

### 4. Plaintiff's Claim for Benefits Under the Plan

20. Plaintiffs filed a Complaint against Horizon seeking increased reimbursement for sacroiliac injections under fluoroscopic guidance purportedly rendered to M.A. on March 8, 2010, under the terms of the Plan. (Complaint).

21. Plaintiff submitted charges in the amount of $8,400 of which Horizon allowed $459.00, and paid reimbursement of $321.30 to Plaintiff. (Complaint, ¶ 12).

22. The explanation of benefits form provided by Horizon indicated that the member was responsible for $137.70 and the remaining balance of $8,078.70 was not allowed. (Complaint ¶ 13).

23. Plaintiffs contends that "the usual and customary fee, often referred to as the 'reasonable and customary' fee, is defined, or is reasonably interpreted to mean, the amount that providers like the Plaintiffs, normally charge to their patients in the free market, i.e. without an agreement with an insurance company to reduce such a charge in exchange for obtaining access to the insurance company's subscribers." (Complaint, ¶ 10).

24. Plaintiff further contends that "the UCR fee means the usual charge for a particular service by providers in the same geographic area with similar training and experience. (Complaint, ¶ 10).

25. Plaintiff is now seeking increased reimbursement for these services in the amount of $8,078.70. (Complaint ¶ 13).

**CONNELL FOLEY LLP**
Liberty View
457 Haddonfield Rd., Ste. 230
Cherry Hill, New Jersey 08002
(856) 317-7100

*Attorneys for Defendant*
*Horizon Blue Cross Blue Shield of New Jersey*

BY: _____
Matthew A. Baker, Esquire

DATE: January 24, 2013